## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **CAROLE GRANT HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 13 C 1804** |
| | ) | |
| **TUNE UP CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant TuneUp Corporation's (TuneUp) motion to dismiss. For the reasons stated below, the motion to dismiss is denied.


## BACKGROUND

Plaintiff Carole Grant Hall (Hall) alleges that TuneUp developed a software called TuneUp Utilities (Software) for use on personal computers (PC). TuneUp allegedly advertised that the Software was capable of increasing start up speeds, optimizing performance, and removing harmful computer errors on a PC. Hall alleges that in approximately April 2012, she saw TuneUp's advertisement regarding the Software while she was browsing the Internet. The advertisement Hall saw

1

allegedly warned her that her PC may contain hundreds of harmful errors, and allegedly informed her that the Software could "accurately identify, report, and repair a variety of computer errors and other problems," thereby speeding up the performance of her PC. (A Compl. Par. 38). In addition, the advertisement allegedly encouraged Hall to download a free trial version of the Software through TuneUp's website, which Hall allegedly did.

Upon downloading the Software, Hall allegedly performed a diagnostic scan of her PC (Scan). After completing the Scan, the Software allegedly indicated to Hall that her PC needed to be repaired due to the presence of hundreds of errors that were causing "strong system interference." (A Compl. Par. 39). Hall allegedly performed a "fix" using the Software. (A Compl. Par. 40). Hall alleges that each time she ran the Software on her PC, the Software reported that there were harmful errors on her computer that needed to be fixed. Hall alleges that thereafter she agreed to pay $29.95 to purchase and register the full verison of the Software based on TuneUp's representations regarding "the functionality and utility" of the Software, and based on the Software's representations regarding the problems that existed on Hall's computer. According to Hall, the Software exaggerated the errors in her PC and fraudulently indicated that such errors were causing damage when in fact they were not. Hall alleges that after she began using the Software, the speed and performance of her PC actually declined significantly.

Hall allegedly commissioned a computer forensics expert (Expert) to examine the Software. The Expert's findings allegedly show that the Software "detect[s] non-

2

errors as harmful computer problems, and mischaracterizes the overall status of a user's computer–all without real, credible diagnosis of the user's system." (A Compl. Par. 24). Hall alleges that regardless of the actual condition of a user's PC, it will always appear that the Software is detecting and fixing problems with the PC. Hall includes in her amended complaint a claim for violation of the Illinois Consumer Fraud and Deceptive Practices Act (Consumer Fraud Act), 815 ILCS 505/1 *et seq.* (Count I), a claim for fraudulent inducement (Count II), a claim for breach of contract (Count III), and a claim for unjust enrichment (Count IV), pled in the alternative to the breach of contract claim. TuneUp now moves to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir.

2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007));
*see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive
a motion to dismiss, the complaint "must contain sufficient factual matter, accepted
as true, to state a claim to relief that is plausible on its face," and that "[a] claim has
facial plausibility when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the misconduct
alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations
omitted).

## DISCUSSION

TuneUp contends that the claims brought in the instant action should be
dismissed.

## I.  Legal Relationship Between Hall and TuneUp

TuneUp argues that all of the claims brought in the instant action should be
dismissed because Hall has no legal relationship with TuneUp.  In support of its
argument, TuneUp has pointed to a Licensing Agreement (Licensing Agreement)
that TuneUp claims Hall entered into with TuneUp Distribution GmbH (TuneUp
Distribution), a distributor of the Software.  TuneUp contends that in ruling on the
instant motion, the court may consider the Licensing Agreement, which TuneUp has
attached to its motion to dismiss, under the familiar doctrine of incorporation by
reference.  Under this doctrine, the court is permitted to consider documents

4

submitted to the court if they are "documents to which the Complaint ha[s] referred, that [are] concededly authentic, and that [are] central to [a plaintiff's] claim." *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009)(citing *Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002)). In the instant action, Hall disputes the authenticity of the Licensing Agreement, contending that such agreement was not posted on TuneUp's website or presented to Hall in any other manner when Hall downloaded and purchased the Software. Hall has also presented information to the court indicating that she did not enter into a Licensing Agreement with TuneUp Distribution, and instead received the Software through another reseller. Since Hall disputes the authenticity of the Licensing Agreement, TuneUp's reliance on the incorporation by reference doctrine is misplaced. Taking Hall's allegations as true, as the court must do at this juncture, Hall's allegations plausibly suggest a legal relationship between Hall and TuneUp. In addition, the court notes that even if the court were to consider the Licensing Agreement presented by TuneUp, the Licensing Agreement would not necessarily defeat all of the claims that Hall has brought against TuneUp.

## II. Counts I and II

### A. Rule 9(b) Pleading Requirements

TuneUp argues that the Consumer Fraud Act claim pled in Count I and the claim for fraudulent inducement pled in Count II should be dismissed because Hall

5

has not pled such claims with the particularity required under Federal Rule of Civil Procedure 9(b) (Rule 9(b)). Rule 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud," which "ordinarily requires describing the 'who, what, when, where, and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)(citations omitted); *see also* Fed. R. Civ. P. 9(b)(stating that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). In the instant action, Hall alleges that she saw TuneUp's online advertisement in April of 2012. (A Compl. Par. 36). Hall also alleges that the advertisement warned her that her PC might be afflicted with a significant number of harmful errors, and that the Software would diagnose and repair problems with Hall's PC. (A Compl. Par. 36). In addition, Hall alleges that the advertisement directed Hall to TuneUp's website. (A Compl. Par. 37). TuneUp allegedly represented on its website that the Software would "accurately identify, report and repair a variety of computer errors and other problems, enhance the performance and speed of [Hall's] computer, and perform [other] beneficial tasks." (A Compl. Par 38). Hall also alleges that after she downloaded the Software, the Software fraudulently reported that Hall's PC "was afflicted with hundreds of errors, which were causing 'strong system interference' and that her computer needed to be repaired." (A Compl. Par. 39). Such allegations are sufficient to satisfy the heightened pleading standards of Rule 9(b).

### B. Allegations of Deception

Tune up argues that the Consumer Fraud Act claim pled in Count I and the claim for fraudulent inducement pled in Count II should be dismissed because Hall did not adequately allege that she was deceived by TuneUp's advertising, which is a required element of such claims.  To state a claim under the Consumer Fraud Act, a plaintiff must allege facts to plausibly suggest: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; [ ](3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce[;]" and (4) "that the defendant's conduct is the proximate cause of the injury." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)(citations omitted).  The Seventh Circuit has observed that the Consumer Fraud Act "protects consumers against 'unfair or deceptive acts or practices,'" and that the Consumer Fraud Act is "liberally construed to effectuate its purpose." *Id.*  Similarly, under Illinois law, "fraudulent inducement requires proof of five elements: '(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.'" *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003)(citations omitted).

In the instant action, Hall alleges that TuneUp fraudulently advertised to Hall that the Software could accurately detect and repair problems with her PC and that the free trial version of the Software fraudulently reported errors on Hall's PC to

7

induce her to purchase the full version of the Software.  Hall also alleges that, in deciding to purchase the Software for $29.99, Hall relied upon both the initial advertisements regarding the Software's functionality and the Software's report that Hall's PC was plagued with hundreds of problems.  (A Compl. Par. 38, 40-41, 43). Hall also alleges that after she began using the Software, the performance of her PC seriously declined.  In the instant action, Hall's allegations are sufficient to state a claim under the Consumer Fraud Act and to state a claim for fraudulent inducement.


    C.  Content of the Alleged Misrepresentations

Tune up argues that the Consumer Fraud Act claim pled in Count I and claim for fraudulent inducement pled in Count II should be dismissed because the alleged representations made by TuneUp in its advertisements constitute mere "puffery".  It is well-settled that "[p]uffing in the usual sense signifies meaningless superlatives that no reasonable person would take seriously, and so it is not actionable as fraud." *Speakers of Sport, Inc. v. ProServ, Inc*., 178 F.3d 862, 866 (7th Cir. 1999); *see also United States v. Canty*, 499 F.3d 729, 733-34 (7th Cir. 2007)(noting that "'puffing' about the quality of one's wares does not give rise to actionable fraud")(citations omitted); *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1008-09 (7th Cir. 2004)(observing that highly subjective expressions "come[] under the category of sales puffery upon which no reasonable person could rely in making a decision"); *Williams v. Aztar Indiana Gaming Corp*., 351 F.3d 294, 299 (7th Cir. 2003)(identifying certain statements as "sales puffery on which no person of ordinary

prudence and comprehension would rely"). In the instant action, Hall has not merely identified subjective phrases used by TuneUp in advertising the Software. Instead, Hall alleges that TuneUp fraudulently represented both the purpose and ability of the Software. Further, Hall alleges that the free trial version of the Software fraudulently identified harmful errors on Hall's computer to induce Hall to purchase the full version of the Software. Based upon the above, Hall has stated a claim under the Consumer Fraud Act and a claim for fraudulent inducement.

## III. Count III

TuneUp argues the breach of contract claim should be dismissed because Hall did not enter into any contract with TuneUp and because Hall failed to allege which contract provisions were violated with respect to the Licensing Agreement. To state a breach of contract claim, a plaintiff must allege "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Wigod*, 673 F.3d at 560 (citations omitted). In the instant action, Hall has alleged that TuneUp offered Hall a full version of the Software, that Hall accepted the offer to purchase the full version of the Software, that Hall paid $29.99 in consideration for the Software, that TuneUp represented that the Software was designed to detect, report, and fix computer problems, that the Software did not perform as warranted, and that Hall sustained damages as a result. Therefore, Hall has adequately pled a breach of contract claim against TuneUp.

The court notes that there is some disagreement between the parties regarding whether Hall entered into a contractual agreement with another party that would defeat Hall's breach of contract claim against TuneUp. At this juncture, it is unclear what other agreements Hall entered into in connection with the purchase of the Software, and whether the terms of any such agreements, if they exist, would defeat Hall's breach of contract claim against TuneUp. At this stage of the proceedings, the court accepts the allegations in Hall's complaint as true. At summary judgment stage, after the parties have had the opportunity to engage in discovery on the issue, the parties will have the opportunity to present evidence and arguments to the court relating to any contractual provisions that effect the relationship between Hall and TuneUp.

## IV. Count IV

TuneUp argues that the unjust enrichment claim should be dismissed because Hall has not alleged sufficient facts with respect to her own experience to establish that TuneUp unjustly retained a benefit from her. Under Illinois law, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc*., 656 F.3d 511, 516 (7th Cir. 2011). Although unjust enrichment is an independent cause of action, "if an

10

unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* at 517. In the instant action, Hall's unjust enrichment claim rests on TuneUp's allegedly fraudulent conduct relating to the Software. The court has already found that Hall has adequately pled the fraud-based claims brought in Counts I and II. The court also finds at the pleadings stage that Hall has adequately alleged a claim for unjust enrichment, which the court notes Hall properly pled as an alternative to her breach of contract claim. Based upon the above, the motion to dismiss is denied.

## CONCLUSION

Based upon the foregoing analysis, the motion to dismiss is denied.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 6, 2013

11