**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CAROLE GRANT HALL, individually and on  :
behalf of all others similarly situated,

                                     :

                Plaintiff,      :      No. 13 CV 1804

                                       :

            v.                  Hon. Samuel Der-Yeghiayan

                                     :      Magistrate Judge Susan E. Cox

TUNEUP CORPORATION, a Delaware
corporation,                       :

               Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT TUNEUP
CORPORATION TO THE FIRST AMENDED CLASS ACTION COMPLAINT**

      Defendant TuneUp Corporation ("TuneUp Corp."), by and through its

undersigned counsel, answers the First Amended Class Action Complaint ("Complaint") of

Plaintiff Carole Grant Hall ("Plaintiff"), upon knowledge as to itself and upon information and

belief as to all other matters, as follows:[1]

      Plaintiff Carole Grant Hall ("Plaintiff" or "Hall") brings this First
Amended Class Action Complaint ("Complaint") against Defendant TuneUp
Corporation ("Defendant") to obtain redress for, and put an end to, Defendant's
deceptive marketing and sale of certain of its software products. Plaintiff, for her
Complaint, alleges as follows upon personal knowledge as to herself and her own
acts and experiences and, as to all other matters, upon information and belief,
including investigation conducted by her attorneys.

      **ANSWER TO UNNUMBERED PARAGRAPH ON PAGE 1:**  TuneUp Corp.

avers that the allegations in the unnumbered paragraph on page 1 of the Complaint are Plaintiff's

legal conclusions to which no answer is required.  To the extent that paragraph may be deemed

---

[1]      TuneUp Corp. denies all headings in the Complaint.

to contain factual allegations, they are denied, except that TuneUp Corp. admits that the

Complaint names one defendant:  TuneUp Corp.

      1.      Defendant develops software that it claims will increase the speed, performance and stability of a consumer's personal computer ("PC"), remove harmful errors, and improve Internet performance.  Unfortunately for consumers, the methods that Defendant uses to induce them into purchasing its software, as well as the software itself, are fraudulent.

**ANSWER TO PARAGAPH 1:**  TuneUp Corp. avers that the allegations in

paragraph 1 of the Complaint are Plaintiff's legal conclusions to which no answer is required.  To

the extent that paragraph 1 may be deemed to contain factual allegations, they are denied, except

that TuneUp Corp. refers to and incorporates herein the content of actual public statements

concerning TuneUp Utilities made by TuneUp Corp. or its affiliates or parents.

      2.      Defendant represents that the software at issue in this lawsuit -- TuneUp Utilities -- is capable of increasing system startup speeds, optimizing computer performance, and removing harmful computer errors.

**ANSWER TO PARAGAPH 2:**  TuneUp Corp. avers that the allegations in

paragraph 2 of the Complaint are Plaintiff's legal conclusions to which no answer is required.  To

the extent that paragraph 2 may be deemed to contain factual allegations, they are denied, except

that TuneUp Corp. refers to and incorporates herein the content of the actual public statements

concerning TuneUp Utilities made by TuneUp Corp. or its affiliates or parents.

      3.      To demonstrate TuneUp Utilities' purported value, consumers are encouraged to download a free trial version of the software to perform a diagnostic scan, which Defendant claims will detect and fix harmful computer errors.  After an initial scan, TuneUp Utilities reports in alarmist fashion that dozens of harmful errors and other threats exist on the consumer's PC (when, in reality, the errors detected do not cause appreciable harm to a computer).

**ANSWER TO PARAGRAPH 3:**  TuneUp Corp. avers that the allegations in

paragraph 3 of the Complaint are Plaintiff's legal conclusions to which no answer is required.  To

the extent that paragraph 3 may be deemed to contain factual allegations, they are denied, except

that TuneUp Corp. admits that a trial version of TuneUp Utilities is available and refers to and

incorporates herein the content of the actual public statements concerning TuneUp Utilities made

by TuneUp Corp. or its affiliates or parents.

> 4.      Users may utilize the software for fourteen (14) days, at the end of
> which the trial period expires, and they must purchase the full version of the
> software to continue using it.  In this way, consumers are led to believe that the
> software is functioning as advertised -- i.e., effectively detecting and removing
> errors that cause system-wide problems -- when in fact, that's simply not the case.

**ANSWER TO PARAGRAPH 4:** TuneUp Corp. admits that a trial version of

TuneUp Utilities is offered and that when the trial version expires, users must pay for a license to

continue using TuneUp Utilities, but denies the remaining allegations in the first sentence of

paragraph 4 of the Complaint.  TuneUp Corp. avers that the allegations in the second sentence of

paragraph 4 of the Complaint are Plaintiff's legal conclusions to which no answer is required.  To

the extent that sentence may be deemed to contain factual allegations, they are denied, except

that TuneUp Corp. avers that TuneUp Utilities in fact performs as advertised.

> 5.      As detailed herein, neither the free trial nor the full registered
> versions of the TuneUp Utilities software perform credible diagnostic scans of a
> user's PC, nor do they provide the other supposed benefits represented by
> Defendant.   Instead, Defendant intentionally designed TuneUp Utilities to
> invariably report in an ominous manner that harmful errors and other problems
> are afflicting a consumer's PC.   Accordingly, consumers are duped into
> purchasing and continuing to use software that does not function as warranted by
> Defendant.

**ANSWER TO PARAGRAPH 5:** TuneUp Corp. denies the allegations in the

first two sentences in paragraph 5 of the Complaint.  TuneUp Corp. avers that the allegations in

the third sentence in paragraph 5 of the Complaint are Plaintiff's legal conclusions to which no

answer is required.  To the extent that sentence may be deemed to contain factual allegations,

they are denied.

> 6.      Plaintiff Carole Grant Hall is a natural person and citizen of the
> State of Illinois.

3

**ANSWER TO PARAGRAPH 6**:  TuneUp Corp. denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint, except TuneUp Corp. admits that Plaintiff is a natural person.

7.      Defendant TuneUp Corporation is a corporation incorporated in and existing under the laws of the State of Delaware, with its headquarters and principal place of business located at 1221 Brickell Avenue, 9th Floor, Suite 900, Miami, Florida 33131.  Defendant conducts business throughout the United States, the State of Illinois, and this District.

**ANSWER TO PARAGRAPH 7**:  TuneUp Corp. denies the allegations in paragraph 7 of the Complaint, except that TuneUp Corp. was incorporated in the State of Delaware, and avers that TuneUp Corp. filed a certificate of dissolution on November 14, 2012 and under Del. Code tit. 8, § 278, continues to exist for purposes of litigation, among others.

8.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a state different than Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

**ANSWER TO PARAGRAPH 8**:  TuneUp Corp. avers that the allegations in paragraph 8 of the Complaint are Plaintiff's legal conclusions to which no answer is required.

9.      This Court has personal jurisdiction over Defendant because it conducts business in Illinois and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from Illinois.

**ANSWER TO PARAGRAPH 9**:  TuneUp Corp. avers that the allegations in paragraph 9 of the Complaint are Plaintiff's legal conclusions to which no answer is required.  To the extent that paragraph 9 may be deemed to contain factual allegations, they are denied.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the injuries of which Plaintiff complains were directed to, and/or emanated from this District. Venue is additionally proper because Defendant transacts significant business in this District, including soliciting consumer business.

**ANSWER TO PARAGRAPH 10:** TuneUp Corp. avers that the allegations in paragraph 10 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 10 may be deemed to contain factual allegations, they are denied.

11. Defendant claims that it develops "innovative software for sophisticated users that [set] new standard[s] for security and user-friendliness in the utility software" industry. To that end, Defendant purports that its software protects consumers "from PC problems, while helping them increase the performance and security of their computers."

**ANSWER TO PARAGRAPH 11:** TuneUp Corp. denies the allegations in paragraph 11 of the Complaint and -- to the extent those are purportedly quoted from websites -- refers to the websites for a complete and accurate statement of their content; to the extent Plaintiff is referring to a prior version of websites, which have changed over time, TuneUp Corp. refers to the relevant prior iteration of those websites for their content.

12. In terms of its reputation in the software industry, Defendant boasts that its "brand has stood for high-quality products that offer maximum customer benefit" since the company's inception, because it continually develops software products to meet the needs of its customers. One such software product is TuneUp Utilities.

**ANSWER TO PARAGRAPH 12:** TuneUp Corp. denies the allegations in paragraph 12 of the Complaint and -- to the extent those are purportedly quoted from websites -- refers to the websites for a complete and accurate statement of their content; to the extent Plaintiff is referring to a prior version of websites, which have changed over time, TuneUp Corp. refers to the relevant prior iteration of those websites for their content.

13. In 2011, AVG Technologies, a publicly traded corporation and competitor of Defendant, acquired TuneUp Corporation. Of note, AVG Technologies develops utility software (similar in functionality to TuneUp Utilities) that is at issue in a class action lawsuit being prosecuted by Plaintiff's counsel and currently pending in the United States District Court for the District of Massachusetts. *See Theis v. AVG Technologies USA, Inc.*, No. 12-cv-10920-RGS (D. Mass. May 5, 2012).

**ANSWER TO PARAGRAPH 13:** TuneUp Corp. admits that AVG Technologies, N.V. is a publicly traded company and that a subsidiary of AVG Technologies, N.V. acquired certain of the assets of TuneUp Corp.'s parent company, TuneUp Software GmbH, in 2011, but denies the remaining allegations in the first sentence of paragraph 13 of the Complaint. TuneUp Corp. admits that PC optimization software is at issue in a lawsuit brought by Plaintiff's counsel in the U.S. District Court for the District of Massachusetts, but denies the remaining allegations in the second sentence of paragraph 13. TuneUp Corp. avers that the allegations in the third sentence of paragraph 13 are Plaintiff's legal conclusions to which no answer is required. To the extent that sentence may be deemed to contain factual allegations, they are denied.

14. Defendant advertises, promotes, and sells the TuneUp Utilities software across the Internet through sponsored advertisements on search engines and third party websites, as well as its own webpage, www.Tune-Up.com.

**ANSWER TO PARAGRAPH 14:** TuneUp Corp. denies the allegations in paragraph 14 of the Complaint.

15. Clicking on one of these advertisements directs a consumer to Defendant's website, where it expressly warrants TuneUp Utilities' functionality.

**ANSWER TO PARAGRAPH 15:** TuneUp Corp. avers that the allegations in paragraph 15 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 15 may be deemed to contain factual allegations, they are denied. To the extent that paragraph 15 purports to characterize statements on the tune-up.com website, TuneUp Corp. refers to that website for a complete and accurate statement of its contents; to the extent Plaintiff is referring to a prior version of that website, which has changed over time, TuneUp Corp. refers to the relevant prior iteration of that website for its content.

16. In particular, Defendant describes certain commonly occurring computer problems, and represents that TuneUp Utilities will detect and remove

the errors that cause such problems. For instance, the marketing materials on Defendant's website are designed to appeal to users frustrated with the following commonly-occurring computer problems:

- "When working at your PC, you get countless error messages, performance is unusually low and there are constant delays…TuneUp Registry Cleaner solves these problems by detecting and fixing registry errors....";

- "Unusual slowdowns when running Windows®, working with all your applications and playing games…That's why TuneUp Drive Defrag restores perfect order to your hard drive while speeding up file access, boot times, and program launches...."; and,

- "Your PC is getting slower and slower, startup time takes ages and your hard disk is chock-full of unnecessary files…Our maintenance features eliminate system-hogging data clutter and prevents the typical 'Windows slowdown' effect...."

**ANSWER TO PARAGRAPH 16:** TuneUp Corp. avers that the allegations in

paragraph 16 of the Complaint are Plaintiff's legal conclusions to which no answer is required.

To the extent that paragraph 16 may be deemed to contain factual allegations, they are denied.

To the extent that paragraph 16 purports to characterize statements on the tune-up.com website,

TuneUp Corp. refers to that website for a complete and accurate statement of its contents; to the

extent Plaintiff is referring to a prior version of that website, which has changed over time,

TuneUp Corp. refers to the relevant prior iteration of that website for its content.

17. Defendant then suggests that TuneUp Utilities detects and fixes the errors that cause the problems listed above. For example, Defendant asserts through its website that TuneUp Utilities is designed to:

- "fix, speed up and maintain your PC with ease!";

- "get your PC in top shape!";

- "optimize your system";

- "make[] sure your PC becomes cleaner and faster than ever before"; and,

- "fix[] registry problems more effectively."

**ANSWER TO PARAGRAPH 17:** TuneUp Corp. denies the allegations in paragraph 17 of the Complaint. To the extent that paragraph 17 purports to characterize statements on the tune-up.com website, TuneUp Corp. refers to that website for a complete and accurate statement of its contents; to the extent Plaintiff is referring to a prior version of that website, which has changed over time, TuneUp Corp. refers to the relevant prior iteration of that website for its content.

18. The cumulative effect of Defendant's representations regarding the software's functionality is that average consumers, seeking a solution to fix their malfunctioning computers, will understandably believe that TuneUp Utilities detects and removes harmful errors that lead to the computer problems described by Defendant in its marketing materials above (e.g., problems causing error messages, system delays, and slow startup times).

**ANSWER TO PARAGRAPH 18:** TuneUp Corp. avers that the allegations in paragraph 18 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 18 may be deemed to contain factual allegations, they are denied. To the extent that paragraph 18 purports to characterize statements on the tune-up.com website, TuneUp Corp. refers to that website for a complete and accurate statement of its contents; to the extent Plaintiff is referring to a prior version of that website, which has changed over time, TuneUp Corp. refers to the relevant prior iteration of that website for its content.

19. In reality, Defendant designed TuneUp Utilities both the free trial version and the full registered version to deceptively convince users that purchase and continued use of the software is necessary.

**ANSWER TO PARAGRAPH 19:** TuneUp Corp. denies the allegations in paragraph 19 of the Complaint.

20. Through its website, Defendant encourages consumers to download a free trial version of TuneUp Utilities to test out the software for 14 days.

**ANSWER TO PARAGRAPH 20**: TuneUp Corp. admits that a trial version of TuneUp Utilities is available on the tune-up.com website, but denies the remaining allegations in paragraph 20 of the Complaint.

21.     Once the consumer downloads and installs TuneUp Utilities, the next phase of Defendant's deceptive scheme begins: the software appears to detect and remove dozens of harmful errors that are supposedly afflicting the computer, in an effort to induce the consumer into purchasing the full, registered version of the software.

**ANSWER TO PARAGRAPH 21**: TuneUp Corp. avers that the allegations in paragraph 21 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 21 may be deemed to contain factual allegations, they are denied. To the extent that paragraph 21 purports to characterize the operation of a trial version of TuneUp Utilities, TuneUp Corp. refers to the trial versions of TuneUp Utilities for the facts concerning its operation.

22.     Upon performing a scan with TuneUp Utilities, the average PC user is informed that hundreds of errors are affecting their computer's performance.  *See* Figure 1 (showing a screenshot of TuneUp Utilities' error reporting interface).  TuneUp Utilities then displays a list of the purported "diagnostic tests" performed on the computer and the corresponding errors or problems detected by the software.  *See id.*  The software also reports -- using both ominous red typeface and a graphical depiction of a red and white warning sign -- that the scan is complete and that the problems detected are causing "[s]trong system interference."  *See id.*

**ANSWER TO PARAGRAPH 22**: TuneUp Corp. denies the allegations in paragraph 22 of the Complaint.  To the extent that paragraph 22 purports to characterize the operation of TuneUp Utilities, TuneUp Corp. refers to TuneUp Utilities for the facts concerning its operation.



(Figure 1)

**ANSWER TO IMAGE ABOVE PARAGRAPH 23 ON PAGE 7:** TuneUp

Corp. is without knowledge or information sufficient to form a belief as to the authenticity of the

image above paragraph 23 on page 7 of the Complaint, which in any event is at most an image

generated by a particular version of TuneUp Utilities after having been run on a unique computer

by a person whose identity TuneUp Corp. does not know and under conditions of which TuneUp

Corp. is unaware; TuneUp Utilities and the reports that it gives are inherently unique to

individual computers. To the extent that image purports to demonstrate the operation of TuneUp

Utilities, TuneUp Corp. refers to TuneUp Utilities for the facts concerning operation.

> 23. Contrary to the software's representations, however, the truth is
> that neither the free trial version nor the full registered version of TuneUp
> Utilities actually perform any meaningful evaluation of the user's computer
> system. Nor can TuneUp Utilities possibly perform the beneficial operations
> warranted by Defendant through its websites, advertising, and in-software
> displays screens.

**ANSWER TO PARAGRAPH 23:** TuneUp Corp. denies the allegations in

paragraph 23 of the Complaint.

24.    Through her attorneys, Plaintiff engaged a computer forensics expert to examine the TuneUp Utilities software.  The results of this investigation confirm that the free trial version, as well as the full, registered version of TuneUp Utilities detect non-errors as harmful computer problems, and mischaracterizes the overall status of a user's computer -- all without real, credible diagnosis of the user's system.

**ANSWER TO PARAGRAPH 24**:  TuneUp Corp. denies the allegations in

paragraph 24 of the Complaint, except that it is without knowledge or information sufficient to

form a belief as to the truth of the allegations about Plaintiff's unidentified "expert" and his

opinions.

25.    For example, Figure 2 below shows the results of an initial diagnostic scan conducted by Plaintiff's expert using TuneUp Utilities *on a brand new computer*, in a pristine virtual computing environment.  The scan's results claim that "99 problems" have been detected on the user's computer, and that analysis reveals that the computer is afflicted by "Medium system interference."

**ANSWER TO PARAGRAPH 25**:  TuneUp Corp. is without knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the

Complaint, which in any event is at most an image generated by a particular version of TuneUp

Utilities after having been run on a unique computer by a person whose identity TuneUp Corp.

does not know and under conditions of which TuneUp Corp. is unaware; TuneUp Utilities and

the reports that it gives are inherently unique to individual computers.  To the extent paragraph

25 purports to characterize the operation of TuneUp Utilities, TuneUp Corp. refers TuneUp

Utilities for a complete and accurate statement of its operation.



(Figure 2)

## ANSWER TO IMAGE BETWEEN PARAGRAPHS 25 AND 26 ON PAGE 8:

TuneUp Corp. is without knowledge or information sufficient to form a belief as to the authenticity of the image between paragraphs 25 and 26 on page 8 of the Complaint, which in any event is at most an image generated by a particular version of TuneUp Utilities after having been run on a unique computer by a person whose identity TuneUp Corp. does not know and under conditions of which TuneUp Corp. is unaware; TuneUp Utilities and the reports that it gives are inherently unique to individual computers. To the extent that image purports to demonstrate the operation of TuneUp Utilities, TuneUp Corp. refers to TuneUp Utilities for the facts concerning its operation.

26. Additionally, after inspection of the scan's results it appears that of the "99 problems" reported by TuneUp Utilities, dozens of the errors detected are simply empty "registry keys." But, research commissioned by Plaintiff's counsel shows that it would require close to 100,000 empty registry keys to cause any statistically significant impact on a user's computer. In other words, any representation that small numbers of empty registry keys are causing a user's computer "Medium system interference" is deceptive at best.

**ANSWER TO PARAGRAPH 26**: TuneUp Corp. is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 26 of the Complaint, which purport to describe work, research, and purported opinions of an unidentified "expert." TuneUp Corp. avers that the allegations in the third sentence of paragraph 26 are Plaintiff's legal conclusions to which no answer is required. To the extent the third sentence of paragraph 26 is deemed to contain factual allegations, they are denied.

> n.1 The "registry" is a database of configuration settings that helps facilitate the operation of computer applications on the operating system. A "registry key" can be thought of as a placeholder within the registry that contains a value, such as the default font size in Microsoft Word.

**ANSWER TO NOTE 1 ON PAGE 8**: TuneUp Corp. denies the allegations in note 1 on page 8 of the Complaint.

> 27. To that end, Plaintiff's expert was able to determine that the introduction of just *seventy-one* registry errors, without any other problems, causes TuneUp Utilities to report that a user's computer suffers from "Medium system interference." *See* Figure 3 (showing a side-by-side comparison of TuneUp Utilities detecting 70 registry errors and not reporting any "system interference," and TuneUp Utilities detecting 71 registry errors and reporting "Medium system interference.")

**ANSWER TO PARAGRAPH 27**: TuneUp Corp. is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint, which purport to describe work, research, and purported opinions of an unidentified "expert."



(Figure 3)

**ANSWER TO IMAGE BETWEEN PARAGRAPHS 27 AND 28 ON PAGE 9:**

TuneUp Corp. is without knowledge or information sufficient to form a belief as to the authenticity of the image between paragraphs 27 and 28 on page 9 of the Complaint, which in any event is at most an image generated by a particular version of TuneUp Utilities after having been run on a unique computer by a person whose identity TuneUp Corp. does not know and under conditions of which TuneUp Corp. is unaware; TuneUp Utilities and the reports that it gives are inherently unique to individual computers. To the extent that image purports to demonstrate the operation of TuneUp Utilities, TuneUp Corp. refers to TuneUp Utilities for the facts concerning its operation.

28. The take-away from these findings is that, regardless of the condition of an individual user's computer system, it will always appear to the user that the software is properly functioning as an error-detection and removal utility. What's clear about TuneUp Utilities' design -- and a common tactic used in this industry -- is that users of the free trial version are deceived into believing that their computers are damaged (or harmed by "system interference" in Defendant's parlance), and that continued use of the software (i.e., purchase of the full version of the software), is necessary to ensure the integrity of their computer.

**ANSWER TO PARAGRAPH 28:** TuneUp Corp. denies the allegations in the first sentence of paragraph 28 of the Complaint. TuneUp Corp. avers that the allegations in the second sentence of paragraph 28 are Plaintiff's legal conclusions to which no answer is required.

14

To the extent that the second sentence of paragraph 28 is deemed to contain factual allegations, they are denied.

29.     Put simply, users are lured into a false sense of *insecurity* by TuneUp Utilities' scan results, because they believe that the non-threatening errors detected correspond with the problems that Defendant claims the software was designed to fix. But that's simply not the case, as Defendant's diagnostic methods are wholly arbitrary.

**ANSWER TO PARAGRAPH 29:** TuneUp Corp. denies the allegations in paragraph 29 of the Complaint.

30.     Furthermore, and emblematic of the deceptive nature of the software's design, in certain instances after checking to determine whether the computer has antivirus software operating on it, TuneUp Utilities displays an ominous "warning sign" and, upon click, directs the user to a webpage that Defendant claims will fix this issue. *See* Figure 4 (showing the aforementioned warning [circled] displayed to users through TuneUp Utilities).

**ANSWER TO PARAGRAPH 30:** TuneUp Corp. avers that the allegations in paragraph 30 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 30 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that TuneUp Utilities will inform users if the computer does not have an antivirus program running on it. To the extent paragraph 30 purports to characterize the operation of TuneUp Utilities, TuneUp Corp. refers to TuneUp Utilities for a complete and accurate statement of its operation.



(Figure 4)

## ANSWER TO IMAGE BETWEEN PARAGRAPHS 30 AND 31 ON PAGE

**10:** TuneUp Corp. is without knowledge or information sufficient to form a belief as to the

authenticity of the image between paragraphs 30 and 31 on page 10 of the Complaint, which in

any event is at most an image generated by a particular version of TuneUp Utilities after having

been run on a unique computer by a person whose identity TuneUp Corp. does not know and

under conditions of which TuneUp Corp. is unaware; TuneUp Utilities and the reports that it

gives are inherently unique to individual computers. To the extent that image purports to

demonstrate the operation of TuneUp Utilities, TuneUp Corp. refers to TuneUp Utilities for the

facts concerning its operation.

31. Defendant's webpage providing the recommended "fix" reads in part, "TuneUp Utilities has detected that either an anti-virus or a firewall software is not running on your computer. Install and activate the missing security software immediately!" *See* Figure 5 (showing the webpage users are directed to upon clicking on the Warning sign shown in Figure 4). Notably, the user is then encouraged to download and install a free trial of antivirus software developed by its own parent company. *See id.* Using this method, TuneUp Utilities drives more users, by means of scare tactics, to utilize software for Defendant's parent company's gain.

16

**ANSWER TO PARAGRAPH 31:** TuneUp Corp. denies the allegations in the first two sentences of paragraph 31 of the Complaint and -- to the extent those are purportedly quoted from websites -- refers to the websites for a complete and accurate statement of their content; to the extent Plaintiff is referring to a prior version of websites, which have changed over time, TuneUp Corp. refers to the relevant prior iteration of those websites for their content. TuneUp Corp. denies the allegations in the third sentence of paragraph 31. To the extent the third sentence of paragraph 31 purports to characterize the statements on websites, TuneUp Corp. refers to those websites for a complete and accurate statement of their content; to the extent Plaintiff is referring to a prior version of websites, which have changed over time, TuneUp Corp. refers to the relevant prior iteration of those websites for their content. TuneUp Corp. denies the allegations in the fourth and fifth sentences of paragraph 31.



(Figure 5)

**ANSWER TO IMAGE ABOVE PARAGRAPH 32 ON PAGE 11:** TuneUp Corp. is without knowledge or information sufficient to form a belief as to the authenticity of the image above paragraph 32 on page 11 of the Complaint. To the extent that image purports to be of a website, TuneUp Corp. refers to the website for a complete and accurate statement of its content; to the extent Plaintiff is referring to a prior version of that website, which has changed over time, TuneUp Corp. refers to the relevant prior iteration of that websites for its content.

32. Through the deceptive scheme described above, Defendant has profited, and continues to profit, by defrauding consumers into believing that their computers are damaged and/or at risk, and that the purchase -- for $29.95 -- and continued use of TuneUp Utilities is necessary to "fix" these problems. Because the software cannot actually repair the problems advertised by Defendant,

17

including those described in paragraphs 16-17 above, and arbitrarily mischaracterizes the condition of the computer, Defendant does not deliver on its promises to its users.

**ANSWER TO PARAGRAPH 32:** TuneUp Corp. avers that the allegations in paragraph 32 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 32 is deemed to contain factual allegations, they are denied.

33. Unfortunately for consumers, Defendant is not alone in its use of the sorts of fraudulent programmatic design and marketing practices at issue in this case. Rather, the "utility software" industry has been fraught with these tactics for over a decade. It is only recently, however, that software developers -- like Defendant and its competitors -- have been called to account for their profiting off of consumers who are unable to identify the fraudulent technological design and methodologies underlying this type of supposedly performance-enhancing software.

**ANSWER TO PARAGRAPH 33:** TuneUp Corp. denies the allegations in paragraph 33 of the Complaint.

34. Indeed, numerous lawsuits have been filed against well-known competitors of Defendant (*e.g.*, Symantec Corp. and McAfee, Inc.) by Plaintiff's counsel here -- alleging similar claims related to the fraudulent design and marketing of so-called utility software products, as well as against Defendant's own parent corporation (AVG Technologies), as described above. Several of those cases have resulted in classwide settlements and industry-changing modifications to the software products at issue -- making their detection, reporting and repairing mechanisms far more transparent and more accurately informing consumers of the threats posed by existing errors on their computers -- and still others are pending.

**ANSWER TO PARAGRAPH 34:** TuneUp Corp. admits that Plaintiff's counsel has filed lawsuits against Symantec Corp. and McAfee, Inc., among others, and that several of those lawsuits have settled on a classwide basis, but denies the remaining allegations in paragraph 34 of the Complaint.

35. Rather than make the necessary changes to its software so that it actually and honestly detects, reports and repairs errors and other problems affecting users' PCs, Defendant has remained steadfast in its fraudulent conduct and, to this day, continues to profit from it.

18

**ANSWER TO PARAGRAPH 35:** TuneUp Corp. avers that the allegations in paragraph 35 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 35 is deemed to contain factual allegations, they are denied.

36.     In or around April 2012, Plaintiff Hall encountered one of Defendant's online advertisements for TuneUp Utilities while browsing the Internet. Defendant's advertisement warned Plaintiff that her computer may be afflicted by hundreds of harmful computer errors, that the TuneUp Utilities software would purportedly diagnose and/or repair the purported problems, and that the software would optimize and increase the speed and performance of her computer and Internet browser.

**ANSWER TO PARAGRAPH 36:** TuneUp Corp. is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 of the Complaint. To the extent the allegations in paragraph 36 are characterizations of advertisements, TuneUp Corp. denies Plaintiff's characterizations and refers to the content of the actual public statements concerning TuneUp Utilities made by TuneUp Corp. or its affiliates or parents.

37.     In order to diagnose and/or repair the purported problems, and otherwise optimize and enhance the speed and performance of her computer, Defendant, through its advertisement, suggested that Hall download a free trial version of TuneUp Utilities. Heeding that directive, Hall navigated to Defendant's website -- www.Tune-Up.com -- to learn more about the software.

**ANSWER TO PARAGRAPH 37:** TuneUp Corp. is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 of the Complaint. To the extent the allegations in paragraph 37 are characterizations of advertisements, TuneUp Corp. denies Plaintiff's characterizations and refers to the content of the actual public statements concerning TuneUp Utilities made by TuneUp Corp. or its affiliates or parents.

38.     Relying upon the representations contained on Defendant's web pages -- namely, that TuneUp Utilities would accurately identify, report and repair a variety of computer errors and other problems, enhance the performance and speed of her computer, and perform such beneficial tasks as those described in paragraphs 16, 17, and 36 above -- Hall downloaded the software.

**ANSWER TO PARAGRAPH 38:** TuneUp Corp. is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 of the Complaint. To the extent the allegations in paragraph 38 are characterizations of webpages, TuneUp Corp. denies Plaintiff's characterizations and refers to the content of the actual public statements concerning TuneUp Utilities made by TuneUp Corp. or its affiliates or parents and to the webpages for a complete and accurate statement of their content.

39. After downloading and installing the free trial version of the TuneUp Utilities software, Hall performed a diagnostic "scan" of her computer. The software reported that her computer was afflicted with hundreds of errors, which were causing "[s]trong system interference" and that her computer needed to be repaired.

**ANSWER TO PARAGRAPH 39:** TuneUp Corp. is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39 of the Complaint. To the extent the allegations in paragraph 39 are characterizations of statements and reports made by TuneUp Utilities, TuneUp Corp. denies Plaintiff's characterizations and refers TuneUp Utilities for the facts concerning its operation.

40. After performing a "fix" with the software, and relying upon Defendant's warranties about the functionality and utility of TuneUp Utilities, as well as the software's representations that her computer was in serious need of repair, Hall agreed to purchase and register the full version of TuneUp Utilities for $29.95.

**ANSWER TO PARAGRAPH 40:** TuneUp Corp. is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 of the Complaint.

41. In reality, the errors "detected" by TuneUp Utilities on Hall's PC were exaggerated and were not actually causing damage to her computer as indicated. Tellingly, every time Hall ran TuneUp Utilities' diagnostic scan, the software reported that harmful errors were adversely affecting her computer and that she needed to "fix" the errors using the software -- even after having supposedly "fixed" the errors as previously detected by the software. As such, Hall was misled into believing that her computer was at-risk and that she needed

20

to purchase and continue to use the full version of TuneUp Utilities in order to repair and/or protect it from the purported errors and problems going forward.

**ANSWER TO PARAGRAPH 41:** TuneUp Corp. denies the allegations in paragraph 41 of the Complaint.

42.    Despite the fact that Hall repeatedly used the TuneUp Utilities software, and purportedly "fixed" any reported errors, the speed and performance of her computer began to deteriorate. In fact, after using the software, the performance of Hall's computer deteriorated to the point where it would frequently freeze -- requiring hard-resets and/or forced shutdowns to regain use of her computer (i.e., removing the computer's power source).

**ANSWER TO PARAGRAPH 42:** TuneUp Corp. is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 of the Complaint.

43.    But for Defendant's representations through its online advertisements and webpages regarding the functionality and benefits of TuneUp Utilities, Plaintiff would not have downloaded, installed, and ran the software on her computer. Similarly, but for the misrepresentations made by the TuneUp Utilities software itself -- namely, that her computer was damaged by hundreds of errors and subject to "[s]trong system interference" -- Hall would not have agreed to purchase the software.

**ANSWER TO PARAGRAPH 43:** TuneUp Corp. avers that the allegations in paragraph 43 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 43 is deemed to contain factual allegations, they are denied. To the extent that paragraph 43 purports to characterize TuneUp Utilities' operation, TuneUp Corp. refers to TuneUp Utilities for a complete and accurate statement of its operation.

44.    Additionally, because the full, registered version of TuneUp Utilities cannot actually perform to the level of utility represented by Defendant (i.e., it did not perform any credible assessment of her PC, nor accurately categorize, report and repair "errors"), she purchased a software product that is worth less than what was reflected in the purchase price she paid.

21

**ANSWER TO PARAGRAPH 44:** TuneUp Corp. avers that the allegations in paragraph 44 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 44 is deemed to contain factual allegations, they are denied.

45. **Class Definition:** Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and a class of similarly situated individuals, defined as follows:

All individuals and entities in the United States and its territories who purchased the TuneUp Utilities software.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entity's current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

**ANSWER TO PARAGRAPH 45:** TuneUp Corp. avers that the allegations in paragraph 45 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 45 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

46. **Numerosity:** The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals and other entities. Class members can be easily identified through Defendant's records and public records.

**ANSWER TO PARAGRAPH 46:** TuneUp Corp. avers that the allegations in paragraph 46 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 46 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

47. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual

members of the Class. Common questions for the Class include but are not limited to the following:

    a)    whether Defendant intentionally designed TuneUp Utilities to deceive consumers into purchasing the full version of the software;

    b)    whether Defendant's conduct described herein constitutes violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq.*;

    c)    whether Defendant's conduct described herein constitutes fraudulent inducement;

    d)    whether Defendant's conduct described herein constitutes a breach of contract; and

    e)    whether Defendant has been unjustly enriched as a result of its conduct described herein.

**ANSWER TO PARAGRAPH 47:** TuneUp Corp. avers that the allegations in paragraph 47 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 47 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

48. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

**ANSWER TO PARAGRAPH 48:** TuneUp Corp. avers that the allegations in paragraph 48 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 48 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

49. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class members, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class and Defendant has no defenses unique to Plaintiff.

**ANSWER TO PARAGRAPH 49:** TuneUp Corp. avers that the allegations in paragraph 49 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 49 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

50. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect the members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**ANSWER TO PARAGRAPH 50:** TuneUp Corp. avers that the allegations in paragraph 50 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 50 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

51. **Superiority:** This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief from Defendant. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

**ANSWER TO PARAGRAPH 51:** TuneUp Corp. avers that the allegations in paragraph 51 of the Complaint are Plaintiff's legal conclusions to which no answer is required.

To the extent that paragraph 51 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

52.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**ANSWER TO PARAGRAPH 52:**  TuneUp Corp. avers that the allegations in paragraph 52 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 52 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

53.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

**ANSWER TO PARAGRAPH 53:**  In response to paragraph 53 of the Complaint, TuneUp Corp. repeats and incorporates by reference its answers and averments contained in paragraphs 1 through 52 hereof as if fully set forth herein.

54.    The Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq.* (the "Consumer Fraud Act"), protects both consumers and companies by promoting fair competition in commercial markets for goods and services.

**ANSWER TO PARAGRAPH 54:**  TuneUp Corp. avers that the allegations in paragraph 54 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 54 is deemed to contain factual allegations, they are denied.

55.    The Consumer Fraud Act prohibits any unlawful, unfair or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact.

**ANSWER TO PARAGRAPH 55:**  TuneUp Corp. avers that the allegations in paragraph 55 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 55 is deemed to contain factual allegations, they are denied.

56. The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

**ANSWER TO PARAGRAPH 56:** TuneUp Corp. avers that the allegations in paragraph 56 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 56 is deemed to contain factual allegations, they are denied.

57. As described herein, Defendant has engaged in deceptive and fraudulent business practices, as defined by the Consumer Fraud Act by, *inter alia*: (i) misrepresenting the utility and functionality of TuneUp Utilities, including through assertions such as those described in paragraphs 16-17, (ii) misrepresenting the health, performance and security of users' computers through in-software representations found in the free trial and full registered versions of the software, (iii) using the misrepresentations to induce consumers into purchasing and continuing to use TuneUp Utilities, and (iv) selling a full version of the software that lacked the advertised utility, similarly produced false errors reports, and otherwise was incapable of functioning as Defendant represented it would.

**ANSWER TO PARAGRAPH 57:** TuneUp Corp. avers that the allegations in paragraph 57 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 57 is deemed to contain factual allegations, they are denied.

58. Defendant's representations were, in fact, false. Defendant's software does not (and cannot) actually perform all of the benefits that Defendant promises through its marketing and websites. Likewise, TuneUp Utilities' scan results were false, because the software did not perform any meaningful evaluation of Plaintiff's and the Class's computers or any problems contained thereon before representing to them that their computers needed repair.

**ANSWER TO PARAGRAPH 58:** TuneUp Corp. denies the allegations in the first and second sentences of paragraph 58 of the Complaint. TuneUp Corp. avers that the allegations in the third sentence of paragraph 58 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that the third sentence of paragraph 58 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

59.     Furthermore, the only reason for consumers to purchase TuneUp Utilities is to ensure any errors or other problems are remedied and to increase their computers' performance.  As such, the free trial version's false results and its failure to offer the level of utility advertised by Defendant were deceptive and were likely to mislead consumers acting reasonably under the circumstances. Likewise, the full version is likely to mislead reasonable consumers into believing that the software is functioning as advertised and that it is necessary to continue to use the software to maintain the health and security of their computers.

**ANSWER TO PARAGRAPH 59:**  TuneUp Corp. avers that the allegations in

paragraph 59 of the Complaint are Plaintiff's legal conclusions to which no answer is required.

To the extent that paragraph 59 is deemed to contain factual allegations, they are denied.

60.     Defendant has violated the "unfair" prong of the Consumer Fraud Act in that it caused substantial injury to consumers through its actions identified above.  The injury caused by Defendant's conduct is not outweighed by any countervailing benefits to consumers, and the injury is one that consumers themselves could not reasonably have avoided.  Given the information asymmetry between Defendant and consumers regarding TuneUp Utilities' functionality, Defendant knew or had reason to know that Plaintiff and the Class could not reasonably have known of or discovered the falsity of Defendant's representations or avoided the harm those misrepresentations caused.

**ANSWER TO PARAGRAPH 60:**  TuneUp Corp. avers that the allegations in

paragraph 60 of the Complaint are Plaintiff's legal conclusions to which no answer is required.

To the extent that paragraph 60 is deemed to contain factual allegations, they are denied, except

that TuneUp Corp. admits that Plaintiff seeks to represent a class.

61.     Defendant has also violated the "fraudulent" prong of the Consumer Fraud Act in that its statements, advertisements, and representations regarding the utility and functionality of TuneUp Utilities -- the same or substantially similar to those described in paragraphs 16-17, and in the results of the software's scans -- are false and likely to deceive a reasonable consumer, as described herein.

**ANSWER TO PARAGRAPH 61:**  TuneUp Corp. avers that the allegations in

paragraph 61 of the Complaint are Plaintiff's legal conclusions to which no answer is required.

To the extent that paragraph 61 is deemed to contain factual allegations, they are denied.

62.     Defendant's unfair and deceptive conduct occurred during the marketing and sale of computer software products, and therefore occurred in the course of Defendant's business practices.

**ANSWER TO PARAGRAPH 62:**  TuneUp Corp. avers that the allegations in paragraph 62 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 62 is deemed to contain factual allegations, they are denied.

63.     Defendant's unfair and deceptive conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for TuneUp Utilities (or, at least, a portion thereof) -- typically $29.95.

**ANSWER TO PARAGRAPH 63:**  TuneUp Corp. avers that the allegations in paragraph 63 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 63 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

64.     Plaintiff seeks an order:  (i) permanently enjoining Defendant from continuing to engage in the unfair and deceptive conduct described herein, (ii) requiring Defendant to pay actual and compensatory damages, and (iii) requiring Defendant to pay interest, attorneys' fees and costs.

**ANSWER TO PARAGRAPH 64:**  TuneUp Corp. avers that the allegations in paragraph 64 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 63 is deemed to contain factual allegations, they are denied.

65.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

**ANSWER TO PARAGRAPH 65:**  In response to paragraph 65 of the Complaint, TuneUp Corp. repeats and incorporates by reference its answers and averments contained in paragraphs 1 through 64 hereof as if fully set forth herein.

66.     As described with particularity throughout this Complaint, Defendant has used, and continues to use, marketing tactics it knows or reasonably should know are false and misleading.

**ANSWER TO PARAGRAPH 66**: TuneUp Corp. avers that the allegations in paragraph 66 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 66 is deemed to contain factual allegations, they are denied.

67. To induce Plaintiff and the Class to purchase TuneUp Utilities, Defendant affirmatively represented that TuneUp Utilities provided a certain level of utility. Specifically, Defendant represented that TuneUp Utilities would honestly and accurately scan Plaintiff's and the Class's computers for harmful errors and problems, increase their computers' speed and performance, protect their computers' security, and otherwise perform the beneficial tasks described in paragraphs 16-17 above. Further, through TuneUp Utilities itself, Defendant affirmatively represented that Plaintiff's and the Class's computers were afflicted with dozens (if not hundreds) of harmful errors and problems, thus necessitating the purchase and use of a full version of the software.

**ANSWER TO PARAGRAPH 67**: TuneUp Corp. avers that the allegations in paragraph 67 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 67 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

68. Defendant's affirmative representations were, in fact, false. In particular, the TuneUp Utilities software cannot increase the performance of a user's computer in the manner described by Defendant, or repair errors and problems as represented through its marketing.

**ANSWER TO PARAGRAPH 68**: TuneUp Corp. denies the allegations in paragraph 68 of the Complaint.

69. The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

**ANSWER TO PARAGRAPH 69**: TuneUp Corp. avers that the allegations in paragraph 69 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 69 is deemed to contain factual allegations, they are denied.

70. As TuneUp Utilities' designer, Defendant knew that its representations about TuneUp Utilities' functionality were false. Defendant

29

intentionally designed its public representations to mislead consumers about TuneUp Utilities' functionality, and programmed TuneUp Utilities (both the free trial and full registered versions) to falsely report and exaggerate the existence and effects of computer errors and problems to deceive users about their computers' system health, performance and security.

**ANSWER TO PARAGRAPH 70:** TuneUp Corp. avers that the allegations in

paragraph 70 of the Complaint are Plaintiff's legal conclusions to which no answer is required.

To the extent that paragraph 70 is deemed to contain factual allegations, they are denied.

71.    Defendant intended that its misrepresentations would induce consumers to rely on, and act based on, the false claims of a computer's health or lack thereof.  Defendant made these misrepresentations with the specific purpose to induce Plaintiff and the other members of the Class to rely upon them when downloading and paying to register a full version of the TuneUp Utilities software, and thereafter continuing to use the software.

**ANSWER TO PARAGRAPH 71:** TuneUp Corp. avers that the allegations in

paragraph 71 of the Complaint are Plaintiff's legal conclusions to which no answer is required.

To the extent that paragraph 71 is deemed to contain factual allegations, they are denied, except

that TuneUp Corp. admits that Plaintiff seeks to represent a class.

72.    As a consumer lacking the requisite technical expertise to independently assess TuneUp Utilities' underlying functionality, and taking Defendant's statements at face value, Plaintiff justifiably relied upon Defendant's misrepresentations by purchasing, downloading and continuing to use the software.  Plaintiff would not have purchased, nor continued to use, TuneUp Utilities but for Defendant's misrepresentations that her computer was in need of repair and that TuneUp Utilities was capable of making such repairs.

**ANSWER TO PARAGRAPH 72:** TuneUp Corp. avers that the allegations in

paragraph 72 of the Complaint are Plaintiff's legal conclusions to which no answer is required.

To the extent that paragraph 72 is deemed to contain factual allegations, they are denied.

73.    By using false and fraudulent marketing tactics, and exaggerated and deceptive in-software representations, Defendant has engaged in fraudulent practices designed to mislead and deceive consumers into purchasing TuneUp Utilities.

**ANSWER TO PARAGRAPH 73:** TuneUp Corp. avers that the allegations in paragraph 73 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 73 is deemed to contain factual allegations, they are denied.

74. As a result of their reasonable reliance upon Defendant's misrepresentations, Plaintiff and the Class have been damaged in the amount of TuneUp Utilities' purchase price, or at least a portion thereof.

**ANSWER TO PARAGRAPH 74:** TuneUp Corp. avers that the allegations in paragraph 74 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 74 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

75. Plaintiff therefore prays for damages in the amount she paid to purchase TuneUp Utilities, or a portion thereof. Further, because Defendant's conduct and misrepresentations were malicious and in conscious disregard for Plaintiff's and the Class's rights, both she and the Class are entitled to punitive damages in an amount sufficient to deter such conduct in the future.

**ANSWER TO PARAGRAPH 75:** TuneUp Corp. avers that the allegations in paragraph 75 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 75 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

76. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

**ANSWER TO PARAGRAPH 76:** In response to paragraph 76 of the Complaint, TuneUp Corp. repeats and incorporates by reference its answers and averments contained in paragraphs 1 through 75 hereof as if fully set forth herein.

77. Plaintiff and the Class members entered into valid and enforceable agreements with Defendant whereby Defendant agreed to sell, and Plaintiff and the Class agreed to purchase, the TuneUp Utilities software that would accurately identify, report and repair legitimate computer errors and problems existing on Plaintiff's and the Class's computers, and otherwise increase the speed, performance and stability of the machines.

31

**ANSWER TO PARAGRAPH 77:** TuneUp Corp. avers that the allegations in paragraph 77 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 77 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

78. Plaintiff and the Class paid, and Defendant accepted, TuneUp Utilities' purchase price (typically $29.95) and therefore, performed their obligations under the contracts.

**ANSWER TO PARAGRAPH 78:** TuneUp Corp. avers that the allegations in paragraph 78 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 78 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

79. Defendant breached its contracts with Plaintiff and the Class by intentionally designing the full version of the TuneUp Utilities software to mischaracterize the true condition of computers, as described herein, and further by failing to provide software that performed the tasks described in paragraphs 16-17 above. These obligations are material terms of the agreement.

**ANSWER TO PARAGRAPH 79:** TuneUp Corp. avers that the allegations in paragraph 79 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 79 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

80. Defendant did not honor these obligations inasmuch as TuneUp Utilities did not actually perform the beneficial tasks described by Defendant.

**ANSWER TO PARAGRAPH 80:** TuneUp Corp. avers that the allegations in paragraph 80 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 80 is deemed to contain factual allegations, they are denied.

81. Likewise, Illinois contract law recognizes the implied covenant of good faith and fair dealing in every contract. Thus, implicit in its contracts with Plaintiff and the Class were provisions prohibiting Defendant from engaging in

conduct that frustrated or injured Plaintiff's and the Class's rights to receive the benefits of the agreement.

**ANSWER TO PARAGRAPH 81:** TuneUp Corp. avers that the allegations in paragraph 81 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 81 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

82. Defendant acted in bad faith and breached these provisions of the agreement, specifically by not honoring its responsibilities to perform truthful diagnostic and remedial operations, as described herein, and instead, providing software that it intentionally designed to produce false errors reports, misrepresent the actual status of users' computers, and which was incapable of repairing the purported errors as advertised.

**ANSWER TO PARAGRAPH 82:** TuneUp Corp. avers that the allegations in paragraph 82 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 82 is deemed to contain factual allegations, they are denied.

83. Furthermore, Defendant was under an implicit obligation to comply with 815 ILCS 505/1, *et seq.*, to be truthful in its advertisements, and to accurately disclose the functionality and utility of its software products. Defendant did not honor any of these obligations.

**ANSWER TO PARAGRAPH 83:** TuneUp Corp. avers that the allegations in paragraph 83 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 83 is deemed to contain factual allegations, they are denied.

84. Defendant breached the implied covenant of good faith and fair dealing by failing to (i) provide a full version of the software that would perform the benefits described in paragraphs 16-17 above, (ii) honestly and accurately inform consumers about the true condition of their computers as described herein, and (iii) fully comply with the proscriptions of applicable statutory law.

**ANSWER TO PARAGRAPH 84:** TuneUp Corp. avers that the allegations in paragraph 84 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 84 is deemed to contain factual allegations, they are denied.

85.     The aforementioned breaches of contract have caused Plaintiff and the Class economic injury and damages, including in the form of the purchase price of the TuneUp Utilities software (or at least a portion thereof), because they purchased a product that does not perform as Defendant promised, and therefore lacks the utility contracted for.

**ANSWER TO PARAGRAPH 85:** TuneUp Corp. avers that the allegations in paragraph 85 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 85 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

86.     Plaintiff incorporates by reference the foregoing allegations 1-75 as if fully set forth herein.

**ANSWER TO PARAGRAPH 86:**  In response to paragraph 86 of the Complaint, TuneUp Corp. repeats and incorporates by reference its answers and averments contained in paragraphs 1 through 75 hereof as if fully set forth herein.

87.     If the Court finds Plaintiff's and the Class's contracts with Defendant invalid, non-existent, or otherwise unenforceable, Plaintiff and the members of the Class may be left without any adequate remedy at law.

**ANSWER TO PARAGRAPH 87:** TuneUp Corp. avers that the allegations in paragraph 87 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 87 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

88.     Plaintiff and the Class have conferred a benefit upon Defendant in the form of the money Defendant charged and collected from them for the purchase of the full version of the TuneUp Utilities software, which did not and could not perform as Defendant promised.

**ANSWER TO PARAGRAPH 88:** TuneUp Corp. avers that the allegations in paragraph 88 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 88 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

89.     Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

**ANSWER TO PARAGRAPH 89:** TuneUp Corp. avers that the allegations in paragraph 89 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 89 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

90.     Under principles of equity and good conscience, Defendant should not be permitted to retain the monies belonging to Plaintiff and the Class that it unjustly received as a result of its wrongful conduct described herein.

**ANSWER TO PARAGRAPH 90:** TuneUp Corp. avers that the allegations in paragraph 90 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 90 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

91.     Accordingly, Plaintiff, on behalf of herself and the other members of the Class, seeks restitution and disgorgement of all amounts by which Defendant has been unjustly enriched.

**ANSWER TO PARAGRAPH 91:** TuneUp Corp. avers that the allegations in paragraph 91 of the Complaint are Plaintiff's legal conclusions to which no answer is required. To the extent that paragraph 91 is deemed to contain factual allegations, they are denied, except that TuneUp Corp. admits that Plaintiff seeks to represent a class.

WHEREFORE, Plaintiff Carole Grant Hall, on behalf of herself and the Class, respectfully requests that the Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Carole Grant Hall as Class Representative, and appointing her counsel as Class Counsel;

B.     Declaring that Defendant's actions, as set out above, constitute (i) violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS § 505/1, *et seq.*, (ii) fraudulent inducement, (iii) breach of contract, and (iv) unjust enrichment (in the alternative to breach of contract);

C.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including, inter alia an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D.    Awarding damages to Plaintiff and the Class in an amount to be determined at trial;

E.    Awarding restitution to Plaintiff and the Class in an amount to be determined at trial, and requiring that Defendant disgorge all monies by which it was unjustly enriched;

F.    Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

G.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

H.    Awarding such other and further relief as equity and justice may require.

## ANSWER TO UNNUMBERED PARAGRAPH ON PAGE 24 BEGINNING "WHEREFORE":

Further, TuneUp Corp. denies each and every allegation in the unnumbered paragraph on page 24 of the Complaint beginning "WHEREFORE," denies that Plaintiff is entitled to certification of any class, and denies that Plaintiff is entitled to any damages or other relief whatsoever.  TuneUp Corp. therefore requests that the Complaint be dismissed with prejudice.

Plaintiff demands a trial by jury for all issues so triable.

## ANSWER TO PARAGRAPH IMMEDIATELY FOLLOWING THE BOLD HEADING ON PAGE 25:

TuneUp Corp. avers that the paragraph immediately following the bold heading on page 25 of the Complaint are Plaintiff's legal conclusions to which no answer to that paragraph is required.  To the extent that paragraph is deemed to contain factual allegations, they are denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint, and each count contained therein, fails to state a cognizable legal claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint, and each count contained therein, is barred because of Plaintiff' failure to mitigate, minimize, or avoid his damages, if any.

### THIRD AFFIRMATIVE DEFENSE

The Complaint, and each count contained therein, is barred because TuneUp Corp. has not breached any duty.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint, and each count contained therein, is barred by the doctrines of estoppel, waiver, consent, laches, and unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint, and each count contained therein, is barred by the applicable statutes of limitation and/or repose.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole, or in part, by the Statute of Frauds.

### SEVENTH AFFIRMATIVE DEFENSE

The Complaint, and each count contained therein, is barred by the doctrine of release.

### EIGHTH AFFIRMATIVE DEFENSE

The Complaint, and each count contained therein, is barred because Plaintiff has not sustained any injury or damages compensable at law.

## NINTH AFFIRMATIVE DEFENSE

The Complaint, and each count contained therein, is barred because Plaintiff has failed to join all necessary parties.

## TENTH AFFIRMATIVE DEFENSE

The Complaint, and each count contained therein, is barred because Plaintiff has failed to plead fraud with specificity.

## ELEVENTH AFFIRMATIVE DEFENSE

The Complaint, and each count contained therein, is barred because Plaintiff did not rely upon any alleged statements.

## TWELFTH AFFIRMATIVE DEFENSE

The Complaint, and each count contained therein, is barred because TuneUp Corp. acted in good faith.

## THIRTEENTH AFFIRMATIVE DEFENSE

The first and second causes of action, which allege violation of the Illinois Consumer Fraud Act and fraudulent inducement, are barred by the economic loss rule.

## FOURTEENTH AFFIRMATIVE DEFENSE

The first and second causes of action, which allege violation of the Illinois Consumer Fraud Act and fraudulent inducement, are barred by the sophisticated user doctrine.

## FIFTEENTH AFFIRMATIVE DEFENSE

The first cause of action, which alleges violation of the Illinois Consumer Fraud Act, is barred by Plaintiff's failure to mail a copy of the Complaint to the Illinois Attorney General.

## SIXTEENTH AFFIRMATIVE DEFENSE

The third cause of action, which alleges breach of contract, is barred because there is a failure of consideration.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The third cause of action, which alleges breach of contract, is barred by the doctrines of mistake, mutual mistake, ratification, acquiescence, and accord and satisfaction.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The fourth cause of action, which alleges unjust enrichment, is barred because Plaintiff has elected his remedy.

## NINETEENTH AFFIRMATIVE DEFENSE

The fourth cause of action, which alleges unjust enrichment, is barred because a contract exists between TuneUp Software GmbH and Plaintiff.

## TWENTIETH AFFIRMATIVE DEFENSE

To the extent that any claim in this action seeks exemplary or punitive damages, any such relief would violate statutory limitations on damages, and/or TuneUp Corp.'s right to procedural and substantive due process under the Fifth Amendment of the United States Constitution, the excessive-fines clause of the Eighth Amendment of the United States Constitution, the Commerce Clause of the United States Constitution, the Full Faith and Credit Clause of the United States Constitution, and applicable provisions of the Constitution of the State of Illinois or of the Constitution of any other applicable state's law. Any law, statute, or other authority purporting to permit the recovery of punitive damages in this case is unconstitutional, facially and as applied, to the extent that, without limitation, it (1) lacks constitutionally sufficient standards to guide and restrain the jury's discretion in determining whether to award punitive damages and/or the amount, if any; (2) is void for vagueness because

it fails to provide adequate advance notice as to what conduct will result in punitive damages; (3) unconstitutionally may permit recovery of punitive damages based on conduct that complies with applicable law, or conduct that was not directed at Plaintiff or did not proximately cause harm, if any, to Plaintiff; (4) unconstitutionally may permit recovery of punitive damages in an amount that is not both reasonable and proportionate to the amount of harm, if any, to Plaintiff and the to the amount of compensatory damages, if any; (5) unconstitutionally may permit jury consideration of net worth or other financial information relating to TuneUp Corp.; (6) lacks constitutionally sufficient standards to be applied by the trial court in post-verdict review of any punitive damages award; (7) lacks constitutionally sufficient standards for related review of punitive damages awards; and (8) otherwise fails to satisfy U.S. Supreme Court precedent, including without limitation Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1 (1991), TXO Production Corp. v. Alliance Resources, Inc., 509 U.S. 443 (1993), BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), and State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003).

## TWENTY-FIRST AFFIRMATIVE DEFENSE

This action is not maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

This action may not be maintained as a class action because, alternatively,

a.  Plaintiff will not fairly and adequately protect the interests of the class on behalf of which she purports to bring this action; or

b.  Plaintiff's claims are not typical of the claims of the purported class; or

c.  Questions of law or fact common to the purported class do not predominate over questions affecting only individual members of the purported class; or

40

    d.       Part or all of the purported class is not numerous; or

    e.       A class action is not superior to other methods for the fair and effective adjudication of the controversy; or

    f.       The other requirements of Fed. R. Civ. P. 23 are not met.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

By alleging the matters set forth in the defenses listed herein, TuneUp Corp. does not allege or admit that it has the burden of proof and/or persuasion with respect to any of them. TuneUp Corp. presently lacks sufficient knowledge or information on which to form a belief as to whether it may have additional affirmative defenses. Accordingly, TuneUp Corp. hereby gives notice that it intends to rely upon such other and further defenses as may become available or apparent during pre-trial proceedings or through investigation and discovery in this case or, if a class were to be certified in this action (in which case TuneUp Corp. may need to assert affirmative defendants as to individuals not presently before the Court), and TuneUp Corp. further hereby reserves its rights to assert such defenses through amendment of this pleading.

WHEREFORE, TuneUp Corp. respectfully requests judgment granting the following relief:

    I.       Dismissing the Complaint against TuneUp Corp. with prejudice;

    II.       Denying Plaintiff's request for class certification and relief;

    III.       Awarding TuneUp Corp. the costs of defending this action, including attorneys' fees, costs and disbursements; and

    IV.       Granting TuneUp Corp. such other and further relief as this Court may deem just and necessary.

Dated: August 20, 2013
     Chicago, Illinois

Of Counsel:

James R. Carroll, Esq.
David S. Clancy, Esq.
Matthew M.K. Stein, Esq.
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800
james.carroll@skadden.com
david.clancy@skadden.com
matthew.stein@skadden.com

Respectfully submitted,


  /s/ Edward M. Crane                
Edward M. Crane
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
edward.crane@skadden.com

Counsel for Defendant
TuneUp Corporation

## <u>CERTIFICATE OF SERVICE</u>

Edward M. Crane, an attorney, hereby certifies that on August 20, 2013, he

caused a true and correct copy of the foregoing document to be served on counsel as follows:

By the Court's ECF system: Rafey S. Balabanian (rbalabanian@edelson.com), Benjamin H. Richman (brichman@edelson.com); and

By hand delivery at the following address: Jay Edelson, Chandler R. Givens, EDELSON LLC, 350 North LaSalle Street, Suite 1300, Chicago, Illinois 60654.

Dated: August 20, 2013

 /s/ Edward M. Crane
Edward M. Crane